# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SUZANNE I.,[1]  )
 )
      **Plaintiff,**  )
 )      CIVIL ACTION
v.  )
 )      No. 19-1213-JWL
ANDREW M. SAUL,  )
**Commissioner of Social Security,**  )
 )
      **Defendant.**  )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the psychological consultants' opinions, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff protectively filed an application for SSI on August 5, 2015. (R. 18, 222-30). After exhausting administrative remedies before the Social Security Administration

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously failed to include a mental limitation in the residual functional capacity (RFC) she assessed which would account for Dr. Adams's and Dr. Markway's limitation to understand, remember, and carry out only 1-2 step instructions, despite finding the psychologists' opinions significantly persuasive.  (Pl. Br. 6) (citing R. 120, 136).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.   Discussion

Plaintiff argues that the ALJ accorded great weight to the psychiatric opinions of two of the state agency psychological consultants, Dr. Markway, Ph.D., and Dr. Adams, Psy.D., who opined Plaintiff could understand, remember, and carry out only one to two step instructions.  (Pl. Br. 5-6) (citing R. 29, 120, 136).  She argues that this was error because the ALJ did not include this specific limitation in the RFC assessed and "the limitation to simple, routine, and repetitive tasks was insufficient to encompass a limitation in the ability to understand, remember, and carry out one to two step tasks as opined by the State [sic] agency consultant."  Id. at 6.  She argues an ALJ must explain why she rejects some limitations in a medical opinion while adopting others, but the ALJ here did not explain why she rejected the limitation to understand, remember, and carry

4

out only one to two step instructions. Id. at 6-8. Plaintiff argues, "The DOT [(Dictionary of Occupational Titles)] defines a reasoning level of one as '[applying] commonsense understanding to carry out simple one- to two-step instructions.' Dep't of Labor, Dictionary of Occupational Titles, Vol. II, App'x C, at 1011. This is precisely the limitation the State agency psychologists opined [Plaintiff] suffered." Id. at 8. She argues the limitation at issue restricts work to reasoning level one whereas each of the jobs relied upon by the ALJ as representative of the work Plaintiff can do requires reasoning level two or three and are therefore not within Plaintiff's capabilities as opined by the psychological consultants. (Pl. Br. 8-9). Moreover, Plaintiff argues the vocational expert (VE) testimony may not be relied upon by the ALJ because "[t]he ALJ never asked the vocational expert what occupations, if any, existed that were both simple and possessed only one to two step instructions as both State [sic] agency psychologists' opinions suggested." Id. at 9.

The Commissioner argues that the ALJ appropriately found Plaintiff can perform simple tasks and is able to perform a significant number of jobs in the national economy. He argues that Dr. Markway "opined that Plaintiff had some moderate mental work-related limitations" and Dr. Adams "opined the same, but added that Plaintiff could carry out simple one- to two-step instructions and could complete a normal workweek." (Comm'r Br. 4) (emphasis added) (citing R. 129-31, 134-36). He acknowledges that the ALJ accorded great weight to both Dr. Markway's and Dr. Adams's opinions. Id. He argues, "Because the ALJ's finding limited Plaintiff to the simplest type of work possible, it adequately accounted for Dr. Adams's opinion that Plaintiff should be limited

5

to one- to two-step tasks." Id. at 5. He argues that any error in not specifically addressing the limitation to one to two step instructions was not harmful at step five because all of the representative jobs relied upon by the ALJ are SVP (specific vocational preparation) level two (unskilled) occupations, and even though one of the jobs is GED (general educational development) reasoning level three, which the Tenth Circuit has found inconsistent with simple and routine work tasks, the other two jobs are reasoning level two jobs and represent a significant number of jobs in the economy—over 400,000. (Comm'r Br. 5-6) (citing Hackett, 395 F.3d at 1176; Stokes v. Astrue, 274 F. App'x 675 (10th Cir. 2008)). He argues that Dr. Adams's limitation to only one to two step instructions does not require a reasoning level one job because GED levels relate to educational background and even a marginal education provides the reasoning ability for simple, unskilled jobs, but Plaintiff has a high school education with three years of college. Id. at 6-7.

In her Reply Brief, Plaintiff argues the Commissioner misunderstands her argument because "[t]he ALJ's reliance on SVP level two jobs does not address the limitation Dr. Adams opined." (Reply 1). She argues the Commissioner's "argument would be valid if the ALJ agreed [Plaintiff] was limited to reasoning level two positions. Dr. Adams's opinion, however, indicates she is limited to only reasoning level one positions." Id. at 2. She argues, "Given his [sic] expertise, it is appropriate to assume Dr. Adams understood that a limitation to one to two step instructions was anonymous [sic] with reasoning level one. There is no evidence to the contrary." Id. She argues that because the DOT lists occupations with an SVP of one and having a reasoning level of

one, the ALJ's RFC assessment was not the most basic work activities, contrary to the Commissioner's argument. Id.

The parties are correct that the ALJ accorded great weight to the medical opinions of Dr. Markway and Dr. Adams. (R. 29). She explained her assessment:

> The September 8, 2015 opinion of Dr. Markway, a State [sic] agency consultant, and the September 9, 2016 opinion of Dr. Adams, a State [sic] agency consultant, are given great weight. Although neither examined the claimant, after reviewing the available record, both opined that she had severe affective and anxiety-related disorders causing mild restriction to her activities of daily living and moderate limitations to social interaction and concentration, persistence, and maintaining pace. Despite her limitations, they opined that the claimant remains able to understand, remember and carry out simple, one- and two-step instructions; make simple, work-related decisions; complete a normal workweek; and adapt to routine changes in the workplace. They also opined that the claimant is generally able to relate appropriately to co-workers and supervisors in small numbers and for short periods. Further, they opined that the claimant would function best in a work setting in which she can complete tasks relatively independently and social interaction is not a primary job requirement. Dr. Adams further opined that there is no evidence of mental changes or worsening. (Ex. B3A, B5A). These opinions are well supported by the record, which shows that the claimant has had improvement with treatment and medication. Indeed, the claimant's [sic] has often had grossly normal mental status examinations with normal mood, affect, concentration, memory, judgment, and insight. (See, e.g., Ex. B3F at 3; B6F at 3, 7, 11; B7F at 2, 9, 28). Further, these opinions are consistent with the claimant's activities, as the record indicates that the claimant is able to go out unaccompanied, complete simple household chores, care for her sister, and sustain a presence in public spaces. (See, e.g., Hearing; Ex. B3E; B6E; B7F at 1, 8, 47). Additionally, Drs. Markway and Adams are licensed psychologists with extensive experience in the evaluation and treatment of persons with mental impairments. Further, as State agency consultants, they are familiar with the rules, procedures, and evidentiary standards of the Social Security Administration. Accordingly, because of their expertise and the support their opinions find in the record, the opinions of Drs. Markway and Adams are given great weight. Nevertheless, to give maximum consideration to the claimant's allegations of extreme social anxiety and agoraphobia in light of the objective evidence; the residual functional capacity precludes work as a member of a team, work with the public, and work around dense

crowds and further restricts the claimant to only occasional interaction with colleagues consisting of brief, task-oriented meetings.

(R. 29).

As the parties agree[2] Dr. Adams opined that Plaintiff "can understand, remember and carry out simple, 1 and 2 step instructions." (R. 136). And, as Plaintiff asserts, the DOT defines level one reasoning development, "Apply commonsense understanding to carry out simple one- or two-step instructions." DOT, App'x C, available online at: https://occupationalinfo.org/appendxc_1.html#III (last visited May 26, 2020). Plaintiff's argument that the ALJ erred not to include a specific limitation to 1 and 2 step instructions in her RFC assessment rests upon her assumption that Dr. Adams's opinion that Plaintiff is limited to "understand, remember and carry out simple, 1 and 2 step instructions" is precisely the same as a General Educational Development, level one reasoning development. However, other than quoting one sentence of the DOT definition of level one reasoning development, Plaintiff cites no authority for this assumption.

Moreover, the DOT explains that

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such

---

[2] The Commissioner points out that Dr. Markway did not include language in her RFC explanation limiting Plaintiff to 1 and 2 step instructions. Rather, she merely opined that Plaintiff "can understand, remember and carry out simple instructions." (R. 120). Nonetheless, this fact does not affect the court's analysis because, as quoted above, the ALJ stated "they [(Dr. Markway and Dr. Adams)] opined that the claimant remains able to understand, remember and carry out simple, one- and two-step instructions." (R. 29) (emphasis added).

>education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.
>
>The GED Scale is composed of three divisions:  Reasoning Development, Mathematical Development, and Language Development.

DOT, App'x C, available online at:  https://occupationalinfo.org/appendxc_1.html#III (last visited May 26, 2020).   And, the complete DOT definition of level one reasoning development is:

>01 LEVEL REASONING DEVELOPMENT
>
> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Id., available online at:  https://occupationalinfo.org/appendxc_1.html#III (last visited May 26, 2020).

Thus, as the Commissioner argues, GED deals with the amount of education (formal or informal) an occupation requires, "reasoning development" is one of three divisions of educational development, and "01 level reasoning development" relates to occupations which require the least educational development in reasoning.  While it might be reasonable for a layman, an attorney, or a court to conclude from the first sentence of the DOT definition of 01 level reasoning development that the educational development necessary "to carry out simple one- or two-step instructions" is equivalent with the mental abilities to "understand, remember and carry out simple, 1 and 2 step instructions" as Dr. Adams opined regarding Plaintiff, Plaintiff cites no authority requiring it.  Reasoning level in the DOT relates to the educational background a particular occupation requires whereas mental abilities in a Mental Residual Functional

Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  POMS DI 24510.060(B)(2).  The ability to understand and remember instructions and the ability to carry out instructions fall within the categories of Understanding and Memory, and of Sustained Concentration and Persistence, respectively.  (R. 134-35); see also POMS DI 24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation and Dr. Adams stated no correlation between her opinion regarding Plaintiff's mental abilities and the DOT GED reasoning levels.

Dr. Adams and Dr. Markway both found that Plaintiff is not disabled.  (R. 121, 137).  While Dr. Adams added "1 and 2 step" to the description of the simple instructions she found Plaintiff "can understand, remember and carry out," and added that "[Plaintiff] can complete a normal work week," she also stated, "There is no evidence of mental changes or worsening."  Her MRFC explanation is otherwise identical to that of Dr. Markway.  Compare R. 120, with R. 136.  In such circumstances, it is no wonder that, as quoted above, the ALJ accepted the opinions as substantially identical, addressed them as a unit, and specifically noted Dr. Adams's opinion "that there is no evidence of mental changes or worsening."  (R. 29).  While it is possible, and reasonable, to view the opinions as materially different, and Plaintiff has done so, the ALJ clearly did not.  Moreover, the ALJ's view of the opinions is also reasonable.  As this court has noted many times, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish

error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). And, as noted above, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481, n.1 (emphases in original). Plaintiff has not met this standard regarding the medical opinions at issue here.

Plaintiff has not shown that Dr. Adams's opinion regarding Plaintiff's ability to understand, remember, and carry out instructions equates to an ability to perform only reasoning level one jobs. Therefore, she has not shown that the ALJ rejected any limitation opined by Dr. Adams, that the RFC assessed required a limitation to reasoning level one jobs, that the ALJ was required to include that limitation in a hypothetical question of the vocational expert, or that all three representative jobs do not meet the RFC assessed. However, Plaintiff points out and the Commissioner agrees that one of the representative jobs relied upon by the ALJ—wire wrapping machine operator—requires a reasoning level of three. (Pl. Br. 9), (Comm'r Br. 6). And the Commissioner points out that the Tenth Circuit has determined that reasoning level three is inconsistent with an RFC for simple, routine, repetitive work tasks. (Comm'r Br. 6) (citing Hackett, 395 F.3d at 1176). The Commissioner argues this error is harmless because the other two

11

representative jobs alone consist of over 400,000 jobs which constitutes a significant number of jobs in the economy.  (Comm'r Br. 6) (citing Johnson v. Comm'r SSA, 764 F. App'x 754, 761-62 (10th Cir. 2019) (finding 178,000 jobs in the national economy is a significant number).  In her Reply Brief, Plaintiff reiterates her argument that Dr. Adams's limitation allows only reasoning level one jobs but admits that the available reasoning level two jobs would constitute a substantial number.  (Reply 2) ("Defendant's argument would be valid if the ALJ agreed [Plaintiff] was limited to reasoning level two positions.").

In the interest of a thorough consideration, the court finds it necessary to address Plaintiff's citation to Coleman v. Astrue, No. 09-1338-SAC, 2010 WL 4942103, *3 (D. Kan. Nov. 30, 2010) in support of her argument.  Plaintiff cited Coleman for the proposition that remand was "required when the ALJ failed to include a limitation to 'one to two-step occupations' when the vocational expert testified that the limitation would preclude all work."  (Pl. Br. 8).  Coleman was a case wherein one ALJ's decision was appealed to the district court and the case was remanded to the SSA for further proceedings.  2010 WL 4942103, *2.  On remand a different ALJ issued a second decision finding the plaintiff not disabled and the plaintiff sought judicial review of the second decision.  Id.  In the first ALJ decision, the RFC assessed an inability to

> work at more than a low memory level, which means the ability to <u>understand, remember and carry out simple one or two-step instructions,</u> the option to use memory aids, and with only minimal changes in the work instructions from week to week.

Coleman, 2010 WL 4942103, *3 (emphasis added).  The second ALJ did not include the underlined limitation and did not discuss the medical opinion from which it was derived or explain why it was not included.  Id.  But, in the hearing after remand the ALJ apparently discussed this issue with the VE as quoted by the court in Coleman.

> Q (by ALJ): Okay.  And there was some earlier discussion of a limitation to one or two-step occupations if in fact I find that the degree of mental deterioration is to that level.  Is that any—contraindicative of these jobs that you cited?
>
> A (by VE): Yes, sir.  That would be considered sheltered work.  That would not be, generally speaking, competitive work like three or four step.

Id., at *3.  The plaintiff's attorney argued these facts to the second ALJ but he never discussed this issue or explained why he did not include this limitation in the RFC.  Id.  The court found clear error, and remanded the case, noting that on remand "if the ALJ's RFC findings conflict with an opinion from a medical source, the ALJ must explain why the opinion was not adopted."  Coleman, 2010 WL 4942103, *9.

Here, the court did not find Coleman persuasive for several reasons.  First, this court found the ALJ's assessment here reasonably evaluated Dr. Adams's opinion and found it substantially the same as Dr. Markway's.  Second, the second ALJ in Coleman was unclear in his consideration and apparently confused the doctor's opinion that the plaintiff was able to "understand, remember and carry out simple one or two-step instructions" with his question to the VE regarding "a limitation to one or two-step occupations," leaving it unclear what was being addressed.  Third, were the court to accept the VE's testimony from Coleman an ability to follow only one to two step instructions would not limit such an individual to performance of only reasoning level

13

one jobs, it would be sheltered work and would preclude all competitive employment. Fourth, and perhaps most importantly, as pointed out by the Commissioner, VE testimony in one case is based upon the specific facts, circumstances, vocational characteristics, and work-related abilities presented to the VE in that case and relates in only the most general way to a different case. (Comm'r Br. 5, n.6).

Plaintiff has shown no error requiring remand in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated May 27, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**